FILED

2002 MAY 24  A 8: 51

CLERK. US DIST COURT
EASTERN DIST. OF CALIF
AT FRESNO

BY_____
          DEPUTY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK ORLANDO JOHNSON, | CV F 99 5982 SMS P |
| Petitioner, | ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | (Document 1) |
| C. A. TERHUNE, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND[1]

On July 18, 1995, in the Kern County Superior Court, a jury found Petitioner guilty of the following: (1) Two counts of kidnap for robbery, in violation of California Penal Code section 209(b)[2]; (2) One count of kidnap, in violation of section 207; and (3) Two counts of second

---

[1] This information is derived from Petitioner's petition for writ of habeas corpus and Respondent's answer to the petition.

[2] All further statutory references are to the California Penal Code, unless otherwise noted.

1    degree robbery, in violation of section 212.5(c).[3]  The jury found the personal weapon use

2    allegation untrue.  The jury found true the allegations that Petitioner had suffered a prior serious

3    and/or violent felony within the meaning of section 667(a) and (c)-(e), and that Petitioner had

4    served two prior prison terms within the meaning of section 667.5(b).

5         On August 15, 1995, the court sentenced Petitioner to state prison for a total determinate

6    term of 23 years, plus two consecutive indeterminate sentences of life with the possibility of

7    parole.

8         On August 15, 1995, Petitioner filed a timely notice of appeal in the Fifth District Court

9    of Appeal.

10        On October 25, 1996, at the request of the California Department of Corrections, the trial

11   court resentenced Petitioner to an aggregate determinate term of 23 years, plus four consecutive

12   life terms with the possibility of parole.

13        On November 13, 1996, Petitioner filed a timely notice of appeal in the Fifth District

14   Court of Appeal.  On January 28, 1997, the Fifth District consolidated Petitioner's two pending

15   cases.

16        On August 8, 1997, the Fifth District affirmed Petitioner's conviction and modified

17   Petitioner's sentence to the following: two consecutive indeterminate terms of 14 years to life for

18   Petitioner's conviction of two counts of kidnap for robbery, consecutive to a determinate term of

19   23 years for Petitioner's conviction for kidnap with enhancements.

20        On or about September 12, 1997, Petitioner filed a petition for review with the California

21   Supreme Court.  On October 22, 1997, the petition was denied.

22        On October 7, 1998, Petitioner filed a petition for writ of habeas corpus in the Kern

23   County Superior Court.  The court denied the petition on December 11, 1998.  Petitioner filed a

24   motion for reconsideration, which was denied on March 11, 1999.

25

26   _____

27        [3] The guilty verdicts returned relate to two separate incidents on April 9, 1995 and April 11, 1995.
     Petitioner was also charged with kidnap for robbery, kidnap, and second degree robbery stemming from a third
28   incident, on March 13, 1995.  However, the trial court declared a mistrial on the counts relating to this third
     incident.  (RT 368.)

1    On March 26, 1999, Petitioner filed a petition for writ of habeas corpus in the Fifth

2    District Court of Appeal.  The court denied the petition on April 8, 1999.

3    On April 19, 1999, Petitioner filed a petition for review in the California Supreme Court.

4    The court denied the petition on June 16, 1999.

5    On June 29, 1999, Petitioner filed the instant federal petition in the United States District

6    Court for the Eastern District of California, Sacramento Division.  On July 13, 1999, the action

7    was transferred to this Court.  Petitioner sets forth the following grounds for relief: (1) Trial

8    counsel was ineffective for failing to investigate Petitioner's mental state regarding his

9    competence to stand trial and/or as a possible mental state defense to the crimes charged; and (2)

10   The California courts have denied Petitioner due process and equal protection by failing to afford

11   Petitioner an evidentiary hearing.

12   On January 18, 2000, Respondent filed its answer.

13   On March 7, 2000, Petitioner filed his traverse.  On July 24, 2000, Petitioner submitted

14   supplemental exhibits in support of his traverse.

15                              STATEMENT OF FACTS

16   Prosecution Evidence[4]

17   On April 9, 1995, Travis L. went home after work to retrieve some movie videos to return

18   to the Wherehouse on Ming Avenue and Real Road in Bakersfield.  Travis was driving his 1987

19   Chevy Sprint.  At approximately 6:45 p.m., he returned the videos, shopped in the store for about

20   30 minutes, then left and began driving toward Real Road.  As Travis slowed to cross a speed

21   bump in the parking lot, Petitioner opened the front passenger door and got inside the car.  Travis

22   did not know Petitioner and had not seen him before.  Petitioner appeared to have a "shiny blade

23   or something" in his left hand which he held at the area of Travis's waist.  Travis thought the

24   shiny object was a weapon.

25   Petitioner told Travis to drive to Ming Avenue and New Stine Road and to make a left

26   turn onto New Stine.  Petitioner then told Travis to turn right onto Appleblossom.  After Travis

27   _____

28       [4] The facts comprising the Prosecution's evidence are taken from the Fifth District's opinion affirming the conviction, which this Court adopts as a correct statement of facts.

1   made the right turn, Petitioner told Travis to pull over.  When the car stopped, Petitioner

2   demanded Travis's wallet.  Petitioner took $22 from the wallet, got out of the car, dropped the

3   wallet outside the car, and fled into some neighboring apartments.  Travis did not see an object in

4   Petitioner's hand when he left the car.

5         Travis picked up his wallet and drove home.  Once there, he called the police.  Travis's

6   mother and aunt were home at the time.  The police dusted the Chevy Sprint for fingerprints,

7   which were identified as Petitioner's.

8         Shortly before 10 p.m. on April 11, 1995, 17-year-old Kimberly A. and 18-year-old

9   Reggie Alvarez were at Wilson Park in Bakersfield.  Reggie was playing basketball with several

10  other young men while Kimberly sat on the sideline writing in a baby book.  Petitioner, who

11  introduced himself as "Jack," was also playing basketball.  Prior to that evening, neither

12  Kimberly nor Reggie had known Petitioner.  At one point, Petitioner asked Reggie and Kimberly

13  to give him a ride, but Kimberly refused because she had to pick up her baby at Reggie's

14  mother's house.

15        The lights on the court went out at 10 p.m.  After the others left, Petitioner, Reggie and

16  Kimberly remained.  Kimberly and Reggie began walking to their car, followed by Petitioner

17  who was carrying a shirt and a duffel bag in his hand.  When they got to the car, Petitioner told

18  them to "get in the car" or he would shoot them.  Petitioner told them he had a gun and told

19  Kimberly to sit in the front seat.  Kimberly was frightened by Petitioner's statement and his

20  physical size.  She sat in the backseat, and Petitioner sat in the front passenger seat.  Petitioner

21  told them to take him to Lucky's shopping center, which was three or four minutes away.

22        At Lucky's shopping center, Petitioner told Reggie to park in the back where no one was,

23  and after they stopped, told Reggie to give him his wallet.  Reggie gave Petitioner the cash from

24  his wallet.  Petitioner got out of the car and fled to some nearby apartments.

25        Reggie drove home, where he and Kimberly called the police.  Two weeks later,

26  Kimberly identified Petitioner as the robber from a photo line-up.

27

28

ji                                            4

1    Defense Evidence

2    Petitioner took the stand in his own defense. Petitioner testified that on April 9, 1995, he

3    was using a payphone when he saw Travis L. driving in his vehicle. Petitioner stated that he got

4    Travis's attention from the phone booth, and Travis rolled down his window and asked if he

5    could help Petitioner. Petitioner then offered Travis $10 in exchange for a ride. Petitioner stated

6    that during the ride, Travis asked Petitioner if he could get him marijuana. After continuing

7    driving and stopping several times in their search for marijuana, Petitioner eventually obtained

8    marijuana for Travis. Petitioner denied forcing Travis to go anywhere, and denied using a

9    weapon.

10   Petitioner further testified that on April 11, 1995, he was playing basketball with Reggie

11   Alvarez. When they were finished playing, Petitioner asked Reggie for a ride. Reggie agreed,

12   and while Petitioner, Reggie, and Kimberly A. were getting into the car, Reggie asked Petitioner

13   if he could get him marijuana. Petitioner stated that Kimberly became upset with Reggie for

14   asking for marijuana. Petitioner testified that they drove to his apartments, and Reggie and

15   Kimberly waited in the car while Petitioner attempted to find marijuana. Petitioner failed to find

16   any, and when he returned to the parking lot, Reggie and Kimberly were gone. Petitioner denied

17   forcing Reggie and Kimberly to go anywhere.

18                                  DISCUSSION

19   A.    Jurisdiction

20   Relief by way of a petition for writ of habeas corpus extends to a person in custody

21   pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

22   or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v.

23   Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504 fn.7 (2000). Petitioner asserts that he suffered

24   violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises

25   out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28

26   U.S.C. § 2254(a); 2241(d).

27   On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

28   of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

1  enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.

2  1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting

3  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

4  1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

5  (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant

6  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

7  B.    Standard of Review

8         The instant petition is reviewed under the provisions of the AEDPA.  Van Tran v.

9  Lindsey, 212 F.3d 1143, 1148 (9th Cir.2000).  A state court's decision denying relief may be

10 reversed only if that decision is "contrary to, or involves an unreasonable application of, clearly

11 established federal law as determined by the Supreme Court of the United States."  Id., at 1149

12 (quoting 28 U.S.C. § 2254(d)(1)).  The distinction between the "contrary to" and "unreasonable

13 application of" provisions of § 2254(d)(1) were noted in Williams v. Taylor, 529 U.S. 362, 405-

14 09 (2000) and summarized by the Ninth Circuit in Van Tran v. Lindsey:

15         A state court's decision can be "contrary to" federal law either 1) if it
       fails to apply the correct controlling authority, or 2) if it applies the controlling
16         authority to a case involving facts "materially indistinguishable" from those in a
       controlling case, but nonetheless reaches a different result. A state court's
17         decision can involve an "unreasonable application" of federal law if it either 1)
       correctly identifies the governing rule but then applies it to a new set of facts in
18         a way that is objectively unreasonable, or 2) extends or fails to extend a clearly
       established legal principle to a new context in a way that is objectively
19         unreasonable. (internal citation omitted)."  212 F.3d at 1150.

20        In Jeffries v. Wood, 114 F.3d 1484 (9th Cir.1997), the Ninth Circuit Court of Appeals,

21 sitting en banc, noted the effect of the AEDPA:

22         Under the amendments to Chapter 153, federal courts must restrict their legal
       analysis to whether the state decision was contrary to or an unreasonable application of
23         "clearly established Federal law, as determined by the Supreme Court of the United
       States." 28 U.S.C. § 2254(d)(1). The Act further restricts the scope of federal review of
24         mixed questions of law and fact. 28 U.S.C. § 2254(e). De novo review is no longer
       appropriate; deference to the state court factual findings is."  114 F.3d at 1498.
25
   Petitioner has the burden of establishing that the decision of the state court is contrary to or
26
   involved an unreasonable application of United States Supreme Court precedent.  Baylor v.
27
   Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).
28

1    While habeas corpus relief is an important instrument to assure that individuals are

2  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

3  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

4  criminal conviction is the primary method for a petitioner to challenge that conviction.  Brecht v.

5  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

6  factual determinations must be presumed correct, and the federal court must accept all factual

7  findings made by the state court unless the petitioner can rebut "the presumption of correctness

8  by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

9  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

10  110 F.3d 1380, 1388 (9th Cir. 1997).

11  C.    Ineffective Assistance of Counsel

12    Petitioner argues that trial counsel was ineffective for failing to investigate Petitioner's

13  mental state regarding his competence to stand trial and/or as a possible mental state defense to

14  the crimes charged.  Petitioner contends that if counsel had conducted an investigation into his

15  mental history, he would have found evidence of his post-traumatic stress disorder ("PTSD").

16  Petitioner was diagnosed with PTSD approximately five (5) months before trial.  (See

17  Psychiatric Report by Dan Dwyer, M.D., February 11, 1995, attached as Exhibit A to Petition for

18  Writ of Habeas Corpus.)[5]  Petitioner argues that counsel could then have used this diagnosis to

19  support his section 1368 motion for a competency hearing, and to support a mental state defense.

20    1.    *General Standard of Review*

21    A claim of ineffective assistance of counsel is cognizable as a claim of denial of the

22  Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance

23  of counsel.  Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063 (1984).  The

24  standard for judging any claim of ineffectiveness must be whether counsel's conduct so

25  ───────────────

26  [5] In the psychiatric report, Dr. Dwyer states that Petitioner, although initially reluctant, explained that he observed the shooting of his pregnant girlfriend and her sister.  Petitioner explained that he was heavily involved in substance abuse trafficking, and because of financial issues, trafficking persons from another country traced him

27  down and shot his pregnant girlfriend and her sister.  Petitioner told Dr. Dwyer that his "mind was a thousand miles away."  Dr. Dwyer concluded that Petitioner's symptoms were suggestive of post traumatic stress disorder, and that

28  environmental cues could stimulate his traumatic memories.  The parties do not dispute the facts of this report.

1  undermined the proper functioning of the adversarial process that the trial cannot be relied upon

2  as having produced a just result. Id.

3        In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court

4  must consider two factors. Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 842 (1993);

5  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

6  First, the petitioner must show that counsel's performance was deficient, which requires a

7  showing that counsel made errors so serious that he or she was not functioning as the "counsel"

8  guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The

9  petitioner must show that counsel's representation fell below an objective standard of

10 reasonableness. Id., 466 U.S. at 688, 104 S.Ct. at 2064. The petitioner must identify counsel's

11 alleged acts or omissions that were not the result of reasonable professional judgment

12 considering the circumstances. Id., 466 U.S. at 690, 104 S.Ct. at 2066; United States v.

13 Quintero-Barraza, 78 F.3d 1244, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's

14 performance is highly deferential. A court indulges a strong presumption that counsel's conduct

15 falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689,

16 104 S.Ct. at 2065; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

17       Second, petitioner must show that counsel's errors were so egregious as to deprive

18 petitioner of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. at

19 2064. The Court cannot find prejudice simply because the outcome would have been different

20 without counsel's errors. Lockhart, 506 U.S. at 369-70, 113 S.Ct. at 842-43. The Court must

21 also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's

22 ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1456,

23 1461 (9th Cir. 1994). To set aside a conviction or sentence solely because the outcome would

24 have been different, but for counsel's error, may grant the petitioner a windfall to which the law

25 does not entitle him. Lockhart, 506 U.S. at 369-70, 113 S.Ct. at 842. Thus, if the Court finds

26 that counsel's performance fell below an objective standard of reasonableness, and that but for

27 counsel's unprofessional errors, the result of the proceeding would have been different, the Court

28

ji

8

1   must then ask whether, despite the errors and prejudice, the trial was fundamentally fair and

2   reliable.

3          Having set forth the applicable standard for establishing ineffective assistance of counsel,

4   the Court will now addresse the specific instances upon which Petitioner's ineffective assistance

5   of trial counsel claims are based.  In determining whether counsel's representation was deficient,

6   the Court will address counsel's failure to investigate, as it relates to the competency hearing *and*

7   the presentation of a mental state defense, simultaneously.  Insofar as the Court finds deficient

8   performance, the Court will address the prejudice prong of <u>Strickland</u> as it relates to the

9   competency hearing and the presentation of a mental state defense, separately.

10         2.     *Counsel's Duty to Investigate*

11         In general, "counsel has a duty to make reasonable investigations or to make a reasonable

12   decision that makes particular investigations unnecessary."  <u>Strickland</u>,466 U.S. at 691, 104 S.Ct.

13   at 2052; <u>see also</u> <u>Seidel v. Merkle</u>, 146 F.3d 750, 755 (9th Cir. 1998).  Counsel must, at a

14   minimum, conduct a reasonable investigation enabling him to make informed decisions about

15   how best to represent the client.  <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994).  Failure

16   to conduct a reasonable investigation renders counsel's performance ineffective.  <u>Id.</u>, at 1456-

17   1457 (citing <u>U.S. v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989) (holding that "[i]neffectiveness is

18   generally clear in the context of complete failure to investigate because counsel can hardly be

19   said to have made a strategic choice when s/he [sic] has not yet obtained the facts on which such

20   a decision could be made).  However, counsel's duty of investigation is determined by the facts

21   he or she knows.  <u>See</u> <u>Ames v. Endell</u>, 856 F.2d 1441, 1444 (9th Cir. 1988).

22         Where counsel fails to investigate a defendant's mental history, counsel's performance

23   will be found deficient where counsel had notice of the defendant's mental problems.  In <u>Seidel</u>

24   <u>v. Merkle</u>, 146 F.3d 750 (9th Cir. 1998), the Ninth Circuit determined that counsel's failure to

25   conduct any investigation into his client's psychiatric history, despite "abundant signs in the

26   record" that his client suffered from mental illness, rendered counsel ineffective.  <u>Id.</u>, at 755.  The

27   pre-trial record indicated that Seidel received psychiatric medication while awaiting trial, that he

28   had been treated at a V.A. hospital for a mental disorder, and that he had been hospitalized for

1    symptoms related to his mental condition. Id. In addition, Seidel's counsel was personally

2    aware of his clients mental problems. Id., at 756. Seidel testified that he told counsel about the

3    symptoms related to his mental condition, and this testimony was corroborated by counsel's

4    handwritten notes reflecting those conversations. Id. The court concluded that because counsel

5    had actual and constructive knowledge of Seidel's mental status, and "failed to conduct even a

6    minimal investigation in order to make an informed decision regarding the possibility of a

7    defense based on Seidel's mental illness," counsel's performance was deficient. Id. The court

8    further determined that if the jury had heard evidence of Seidel's PTSD and chronic brain

9    damage, "the jury in all likelihood would have returned a verdict of manslaughter instead of

10   murder." Id.

11       Similarly, in Bouchillon v. Collins, 907 F.2d 589, 597 (5th Cir. 1990), the Fifth Circuit

12   determined that where counsel was aware of defendant's mental problems, and where an insanity

13   defense was the only defense available, counsel's failure to conduct any investigation was "not a

14   tactical decision," and rendered counsel ineffective. The court stated, "[t]o do no investigation at

15   all on an issue that not only implicates the accused's only defense, but also his present

16   competency, is not a tactical decision." Id. (recognizing that "[i]t must be a very rare

17   circumstance indeed where a decision not to investigate would be 'reasonable' after counsel had

18   notice of the client's history of mental problems."). Again, however, the determination of

19   ineffective assistance turned upon whether counsel had notice of his client's problems. The court

20   recognized, "[w]here a condition may not be visible to a layman, counsel cannot depend on his or

21   her own evaluation of someone's sanity *once he has reason to believe an investigation is*

22   *warranted...*" Id. (emphasis in original); see also Wilson v. Henry, 185 F.3d 986, 990 (9th Cir.

23   1999) (holding that where it was not clear that counsel had reason to believe that a mental state

24   defense was warranted, a decision not to pursue such a defense is not unreasonable under

25   Stickland). Accordingly, whether counsel had a duty to investigate Petitioner's mental state

26   insofar as it related to Petitioner's competency *and/or* a possible defense turns on whether

27   counsel had actual or constructive notice of Petitioner's mental problems.

28

3.    *Counsel's Performance Was Deficient*

To determine whether counsel's actions were deficient, the Court will begin its analysis with a review of counsel's section 1368 motion. The arguments made in support of counsel's motion allow the Court to determine whether counsel had notice of Petitioner's mental health issues so as to require an investigation into Petitioner's mental history.

In presenting his section 1368 motion to the trial court, counsel stated that Petitioner exhibited "bizarre behavior," had "numerous outbursts," and "has had [sic] wild – wildly vacillating attitude toward me." (RT 17.)[6] Counsel further explained "at times Mr. Johnson is real lucid and he's a big help to me...[o]ther times, trying to converse with him is essentially impossible. I think that more than 50 percent of the time he is -- it is impossible to rationally – for him to rationally assist me in this case. I think that there is substantial evidence that he is incompetent to proceed in this matter." (RT 18.) Counsel explained that the only reason he was bringing the motion was because of a conversation with Petitioner's mother the day before. "[S]he is concerned that he is degenerating. She said that he had a serious auto accident when he was about nine or ten years old, I think he is 30...[he] may have suffered some brain damage which exists to this day." (RT 18-19.) Counsel also stated that Petitioner's mother gave him the names of hospitals at which Petitioner may have been treated for this auto accident, and where he received subsequent treatment. (RT 19-20.) Counsel told the trial court that he was also aware that Petitioner had applied for disability insurance through social security, and that Petitioner was a boxer and may have suffered cranial injuries as a result. (RT 20.)

Throughout the hearing, Petitioner objected to counsel's characterization of him as incompetent. When the trial court asked Petitioner if he could cooperate with counsel, Petitioner replied, "Sir, you got [sic] my undivided attention and full cooperation, sir...I been [sic] in trial three times, your Honor. I never had a problem at all." (RT 22-23.)

The court denied counsel's motion because counsel failed to present substantial evidence of Petitioner's incompetency and instead presented his own doubts as to Petitioner's competency.

---

[6] Unless otherwise noted, all references to "RT" refer to the Reporter's Transcript for the July 11-18, 1995, proceedings.

1  The court cited the following as reasons for denying the motion: (1) there was no indication that

2  the auto accident created any type of condition preventing Petitioner from cooperating with

3  counsel or rendering him incompetent; (2) Petitioner's outbursts are not indicative of

4  incompetence, as outbursts are common in criminal cases; (3) Petitioner has had no mental

5  problems in the past; and (4) Petitioner has not been declared incompetent in his past court

6  proceedings. (RT 23-24.)

7      Although Petitioner objected to counsel's motion, and the trial court denied the motion

8  for lack of substantial evidence, this Court must determine what facts counsel had knowledge of

9  to determine if counsel was deficient. The parties dispute whether counsel had knowledge of

10  Petitioner's PTSD diagnosis. However, this point is irrelevant and is certainly not the end of the

11  inquiry. The proper analysis turns on whether counsel knew enough about Petitioner's mental

12  health so as to require him to conduct an investigation.

13      It is clear from the transcripts of the section 1368 hearing that counsel was aware of

14  Petitioner's mental health issues. First, and perhaps most importantly, counsel states that

15  Petitioner's mother told him Petitioner was involved in an auto accident when he was 9 or 10,

16  and that he "**may have suffered some brain damage which exists to this day.**" (RT 19.)

17  Counsel also states that Petitioner may have suffered cranial injuries as a result of his boxing

18  career. (RT 20.) Counsel was therefore aware of at least two instances in which Petitioner may

19  have suffered brain injury. (See also Velling Declaration at ¶ 3, attached as Exhibit 8 to

20  Respondent's Answer (admitting that Petitioner's mother told him of Petitioner's auto accident

21  as a child and that possible brain damage may have resulted).) Counsel was even told the names

22  of possible hospitals at which Petitioner was treated after the auto accident. (RT 19-20.)

23      In further support of his motion, counsel described his own experiences with Petitioner.

24  Counsel described Petitioner as having "numerous outbursts" in court, and having a "wildly

25  vacillating attitude" towards counsel. (RT 17.) Counsel also described Petitioner as being "real

26  lucid" and helpful at times, but admitted that at "[o]ther times, trying to converse with him is

27  essentially impossible." (RT 18.) Counsel even went so far as to say, "I think that more than 50

28  percent of the time he is – it is impossible to rationally – for him to rationally assist me in this

12

jl

1   case." (RT 18.) Although this may not have constituted "sufficient evidence" to warrant a

2   competency hearing pursuant to section 1368, surely it was enough to signal counsel that perhaps

3   an investigation was necessary. The Court therefore concludes that counsel had actual

4   knowledge of Petitioner's mental health issues so as to warrant an investigation. Seidel v.

5   Merkle, 146 F.3d 750 (9th Cir. 1998) Counsel's failure to conduct *any* investigation, let alone an

6   investigation sufficient to justify any possible "tactical decisions," rendered his representation

7   ineffective. See Strickland, 466 U.S. at 691, 104 S.Ct. at 2052; see also Sanders v. Ratelle, 21

8   F.3d 1446, 1456 (9th Cir. 1994) (holding counsel ineffective where he neither conducted a

9   reasonable investigation nor made a showing of strategic reasons for failing to do so). As the

10  court recognized in Bouchillon, 907 F.2d at 597, "[i]t must be a very rare circumstance indeed

11  where a decision not to investigate would be 'reasonable' after counsel had notice of the client's

12  history of mental problems."

13          It is important to note that we are not faced with a situation where counsel initiated an

14  investigation, and after a certain point, concluded that further investigation would be fruitless, or

15  that a competency hearing or mental state defense was not, as a tactical matter, the best path to

16  follow. Instead, we have an attorney, who, despite numerous red flags concerning Petitioner's

17  mental health, failed to conduct *any* investigation to determine how best to represent his client.

18  Counsel's failure to conduct *any* investigation is especially egregious given counsel's own

19  admission that a mental state defense was "the only plausible defense" for Petitioner. (See

20  Velling Declaration at ¶ 5, explaining why he made numerous unsupported references to

21  Petitioner's mental state at the time of the crimes during closing arguments); Bouchillon v.

22  Collins, 907 F.2d 589, 597 (5th Cir. 1990) (holding that where counsel was aware of defendant's

23  mental problems, and where an insanity defense was the only defense available, counsel's failure

24  to conduct any investigation was "not a tactical decision," and rendered counsel ineffective).

25          Counsel's declaration reveals additional evidence in support of this Court's finding that

26  counsel was deficient. Counsel states that he did not pursue a mental state defense, and

27  presumably did not conduct an investigation to support such a defense, because he "felt appellant

28  knew exactly what he was doing during all of the charged offenses, i.e., that he had the specific

1    intent to do what he did, and he went right ahead and did it." (Velling Declaration at ¶ 5.)

2    Additionally, during discussions as to whether Petitioner's leg irons should be removed, counsel

3    stated to the judge, "I am not so sure I am as confident as [Petitioner] is in his ability in beating

4    this case, but I don't think leg irons are necessary." (RT 49.) Certainly, where counsel admitted

5    that a mental state defense was Petitioner's "only plausible defense," it is incomprehensible how

6    counsel could substitute his own personal beliefs in place of his duties to provide Petitioner with

7    a constitutionally sufficient defense. See Wilcox v. McGee, 241 F.3d 1242, 1246 (9th Cir. 2001)

8    (holding that where there was no strategic reasons for counsel's failure to raise an "obvious and

9    meritorious" motion, counsel was ineffective); Bouchillon v. Collins, 907 F.2d 589, 597 (5th Cir.

10   1990); see also Harris By and Through Ramseyer v. Blodgett, 853 F.Supp. 1239, 1260

11   (W.D.Wash.,1994) (holding counsel ineffective where counsel, because of his personal opinion

12   of the defendant, failed to present mitigating evidence).

13        Accordingly, this Court determines that counsel's representation of Petitioner fell below

14   an objective standard of reasonableness, and was therefore deficient. The Court will now turn to

15   the second prong of Strickland, and determine whether counsel's deficient performance caused

16   Petitioner prejudice.

17        4.    *Counsel's Deficient Performance Caused Petitioner Prejudice*

18        As set forth above, in addition to proving counsel was deficient, a petitioner must show

19   that counsel's errors were so egregious so as to deprive petitioner of a fair trial, one whose result

20   is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2064. The Court cannot find prejudice simply

21   because the outcome would have been different without counsel's errors. Lockhart, 506 U.S. at

22   369-70, 113 S.Ct. at 842-43 (1993). The Court must also evaluate whether the entire trial was

23   fundamentally unfair or unreliable because of counsel's ineffectiveness. Thus, if the Court finds

24   that counsel's performance fell below an objective standard of reasonableness, and that but for

25   counsel's unprofessional errors, the result of the proceeding would have been different, the Court

26   must then ask whether, despite the errors and prejudice, the trial was fundamentally fair and

27   reliable.

28

1    The Court will begin its analysis with determining whether counsel's failure to

2  investigate Petitioner's mental health so as to support a mental state defense prejudiced

3  Petitioner.

4    By counsel's own admission, a mental state defense was Petitioner's "virtually...only

5  plausible defense." (Velling Declaration at ¶ 5.)  Therefore, counsel's failure to investigate

6  Petitioner's mental health had serious consequences.  In other words, counsel's deficient

7  performance essentially deprived Petitioner of sufficient evidence to support, as even counsel

8  admits, "virtually the only plausible defense."  (Id.)

9    A review of counsel's closing argument confirms that counsel's repeated references to

10  Petitioner's "bizarre" behavior, although a half-hearted attempt to state a defense, was the only

11  defense presented.  Counsel repeatedly asked the jury to consider what Petitioner had "in mind"

12  at the time of the incidents.  For example, counsel states, "what exactly was going through

13  Johnson's mind.  What does this fellow have in mind when he engages in these rather unusual

14  and bizarre acts."  (RT 307.)

15    As the prosecution correctly pointed out to the jury, although Petitioner's counsel made

16  repeated references to Petitioner's "erratic unusual behavior," such behavior was not a defense to

17  the crimes charged.  (RT 312.)  The prosecution continued, "[t]here is [sic] specifics as to mental

18  defense in the law and you are not to be receiving any instructions that erratic behavior is a

19  defense to any of these crimes."  (RT 312.)  As the prosecution properly explained in closing

20  argument, defense counsel had not met his evidentiary burden to present a mental state defense,

21  and therefore defense counsel's repeated references to Petitioner's mental status were not to be

22  taken into account.

23    Initially, the Court notes that counsel's deficient performance, which resulted in

24  depriving Petitioner of his only plausible defense, may be reviewed under the exception to

25  Stickland, as set forth in United States v. Chronic, 466 U.S. 648, 104 S.Ct. 2039 (1984).

26  Although Strickland requires an analysis of prejudice once counsel's performance is deemed

27  deficient, the Supreme Court, in Chronic, held that "if counsel entirely fails to subject the

28  prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth

1   Amendment rights that makes the adversary process itself presumptively unreliable." Id., 466

2   U.S. at 659, 104 S.Ct. at 2047.

3   Although a failure to conduct any investigation is generally reviewed under the Strickland

4   standard, Woodward v. Collins, 898 F.2d 1027, 1029 (9th Cir. 1990), counsel's failure to

5   investigate in the instant case had a fatal result by depriving Petitioner of his only defense.  In

6   United States v. Swanson, 943 F.2d 1070 (9th Cir. 1991), counsel, in closing argument, conceded

7   to the jury that there was no reasonable doubt that his client robbed a bank.  The court held that

8   this was "not merely a negligent misstep in an attempt to champion his client's clause," but was

9   instead "an abandonment of the defense of his client at a critical stage of the criminal

10  proceedings." Id.  The court further recognized that "an attorney who adopts and acts upon a

11  belief that his client should be convicted "fails to function in any meaningful sense as the

12  Government's adversary." Id.  Counsel's "statements conveyed to the jury his belief that his

13  client was guilty." Id.

14  Similarly, by failing to investigate in an attempt to present sufficient evidence in support

15  of Petitioner's only plausible defense, counsel adopted and acted upon his belief that his client

16  was guilty.  As counsel admits, "I felt appellant knew exactly what he was doing during all of the

17  charged offenses, i.e., that he had the specific intent to do what he did, and that he went right

18  ahead and did it." (Velling Declaration at ¶ 5.)  Counsel also admitted to the trial judge that he

19  was not "as confident" as Petitioner in Petitioner's ability to beat the conviction.  (RT 49.)

20  Counsel's belief in his client's guilt and the resulting deficient performance entirely failed to

21  subject the prosecution's case to meaningful adversarial testing, and the adversarial process itself

22  was rendered presumptively unreliable.  See Chronic, 466 U.S. at 659, 104 S.Ct. at 2047.  As

23  such, prejudice is presumed from counsel's deficient performance.

24  Even if this Court were to continue its analysis under Strickland, the result is no different.

25  Petitioner was convicted of two counts of kidnap for robbery, in violation of Penal Code section

26  209(b), one count of kidnap, in violation of section 207, and two counts of second degree

27  robbery, in violation of section 212.5(c).  The jury found the personal weapon use allegation

28  untrue, as alleged in one count of second degree robbery and one count of kidnap for robbery.

Although kidnapping is a general intent crime, the remainder of Petitioner's convictions required specific intent. See People v. Davis, 10 Cal.4th 463, 519 (1995). Robbery requires the specific intent to deprive the victim of his or her property permanently. See People v. Albert A., 47 Cal.4th 1004, 1007 (1996) (holding that robbery is essentially larceny aggravated by use of force or fear to facilitate the taking of property from the person or presence of the possessor). Likewise, kidnap for robbery requires the that the specific intent to commit robbery be formed before the "asportation" is undertaken. See People v. Gregory S., 149 Cal.Rptr. 216, 218 (1978). Therefore, four of Petitioner's five convictions required specific intent.

Petitioner contends that if counsel had investigated his mental history, he would have found evidence to support a mental state defense. He further argues that he would then have been entitled to CALJIC 3.32, which instructs the jury that evidence of a mental disorder should be considered "solely for the purpose of determining whether the defendant actually formed the required specific intent, which is an element of the crime charged."

The Court finds that there is a reasonable probability that if the jury had been presented with evidence of a mental state defense, it would not have found the requisite specific intent to convict Petitioner of kidnap for robbery, and/or robbery. See eg., Seidel v. Merkle, 146 F.3d 750, 757 (9th Cir. 1998) (holding that had the jury been presented with evidence of Seidel's mental illness, there is a reasonable probability that the jury would not have found malice). A review of the trial transcripts reveals that Petitioner may not have had a solid grip on reality, both during the events in question and during trial. On of the victims, Kimberly A., testified that Petitioner "was very hyper" and "talked a lot about how he was a boxer and all these people that he knew that were boxers and he said that the next day he was going to L.A. and he was going to be in a boxing match..." (RT 59.) Kimberly A. continued, "he was ...talking a lot the whole time and he would...talk to himself and he would repeat...famous basketball players' names..." (RT 59.) Moreover, the trial court had to repeatedly warn Petitioner to discontinue his outbursts during trial. Petitioner was unable to do so, and was eventually removed from the proceedings. (RT 285.) The trial court explained to the jury that Petitioner "is a bit hyperactive and he is – well, the indication is that he will not or cannot restrain himself during these proceedings." (RT

1   287.)  Given Petitioner's demeanor during trial, and at least one of his victim's description of

2   Petitioner during the incident, there is a reasonable probability that the jury would not have have

3   convicted Petitioner of kidnap for robbery, and/or robbery, had they been presented with

4   evidence of a mental state defense.

5       Additionally, Petitioner himself testified that each of his victims either approached him

6   for drugs, or eventually asked for drugs after agreeing to give Petitioner a ride.  (RT 183-184,

7   204, 215-218.)  Given Petitioner's overall demeanor and his possible delusional state, the Court

8   finds there is a reasonable probability that had the jury been given evidence of a mental state

9   defense, they may have determined that Petitioner truly believed he was buying drugs for his

10  victims, instead of intending to deprive them of their property.[7]

11      Although this Court is certainly unable to determine whether the jury would have found

12  Petitioner did not act with the necessary specific intent, the Court finds that there is a reasonable

13  probability of such an outcome.  More importantly, despite counsel's errors and the resulting

14  prejudice, the Court cannot say that Petitioner's trial was fundamentally fair and reliable.

15  Petitioner was deprived of his only defense because of counsel's failure to investigate, a defense

16  which had a reasonable probability of success given the above factors.[8]

17      The Court determines that the California state courts' denial of Petitioner's ineffective

18  assistance of counsel claim was erroneous, and an unreasonable application of clearly established

19  federal law, as announced by the United States Supreme Court in Strickland.[9]  See Van Tran v.

20  Lindsey, 212 F. 3d 1143, 1154 (9th 2000); Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir.

21

22  _____

23      [7] This is especially so given the mistrial as to one of the incidents, and the jury's finding that Petitioner did
    not use a weapon during the incident involving Travis L.

24      [8] Because the Court determined that counsel's failure to investigate so as to present a mental state defense
    resulted in prejudice, the Court will not consider whether counsel's failure to investigate so as to present evidence in
25  support of the section 1368 motion caused Petitioner prejudice.

26      [9] The Court notes that the Fifth District Court of Appeal denied Petitioner's petition for writ of habeas
    corpus without comment, and the California Supreme Court denied Petitioner's petition for review without
27  comment.  Where the state court does not provide the basis for its denial, "an independent review of the record is
    required to determine whether the state court clearly erred in its application of controlling federal law."  Delgado v.
28  Lewis, 223 F.3d 976, 982 (9th Cir.2000) (citing Tran, 212 F.3d at 1153).

1   2000) (determining that an ineffective assistance of counsel claim should be analyzed under the

2   "unreasonable application" prong of 28 U.S.C.§ 2254(d)).

3   D.      State Court's Failure to Grant Evidentiary Hearing

4           Petitioner next argues that the state courts violated his due process and equal protection

5   rights by refusing to grant him an evidentiary hearing.  Petitioner argues that despite his prima

6   facie showing of ineffective assistance of counsel, both the Kern County Superior Court and the

7   Fifth District Court of Appeal denied his petitions for writ of habeas corpus without holding an

8   evidentiary hearing.

9           As a threshold matter, Respondent contends that Petitioner did not exhaust this claim for

10  relief.  A petitioner can satisfy the exhaustion requirement by providing the highest state court

11  with a full and fair opportunity to consider each claim before presenting it to the federal court.

12  Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828,

13  829 (9th Cir. 1996).  A federal court will find that the highest state court was given a full and fair

14  opportunity to hear a claim if the petitioner has presented the highest state court with the claim's

15  factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal

16  basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

17  Additionally, the petitioner must have specifically told the state court that he was raising a

18  federal constitutional claim.  Duncan, 513 U.S. at 365-66, 115 S.Ct. at 888; Keating v. Hood, 133

19  F.3d 1240, 1241 (9th Cir.1998).

20          A review of Petitioner's April 19, 1999, petition for review in the California Supreme

21  Court indicates Petitioner exhausted this claim.  In his petition for review, Petitioner states, "the

22  State's refusal to grant Petitioner an evidentiary hearing violates his 14th Amendment rights to

23  due process and equal protection of the laws."  (Exhibit 7, attached to Respondent's Answer.)

24  The Court therefore finds that Petitioner has exhausted this claim for relief.

25          In any event, Petitioner's claim is moot.  As the Court has granted the petition based on

26  the above claims, the Court will not review this claim on the merits.

27

28

1                 <u>ORDER</u>

2         Accordingly, IT IS HEREBY ORDERED that:

3     1.     The petition for writ of habeas corpus is GRANTED, subject to the State's right to

4         retry Petitioner; and

5     2.     The State must, within ninety (90) days of the date of service of this order, inform

6         the Court whether it will retry Petitioner.

7

8 IT IS SO ORDERED.

9

10 DATED: May 24, 2002

11                          SANDRA M. SNYDER
                         UNITED STATES MAGISTRATE JUDGE

jl

sr

United States District Court
for the
Eastern District of California
May 24, 2002


\* \* CERTIFICATE OF SERVICE \* \*


1:99-cv-05982


Johnson

    v.

Terhune

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on  May 24, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

                                                SMS-P

        Jack Orlando Johnson
        H-84530
        CSP-2
        Corcoran State Prison
        PO Box 5246
        Corcoran, CA  93212

        Alison Elle Aleman
        Attorney General's Office
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA  94244-2550




                                Jack L. Wagner, Clerk


                        BY: _____
                             Deputy Clerk